UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARRINGTON TABE OROCK,
Plaintiff,
v.
SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-12300-TLT

**ORDER GRANTIING PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 9, 10

On October 21, 2026, Petitioner Harrington Tabe Orock ("Petitioner") filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"). ECF 1. In the Petition, Petitioner alleged that he was detained by U.S. Immigration and Customs Enforcement ("ICE") without notice or a pre-deprivation hearing in violation of his procedural and substantive due process rights. ECF 1 ¶¶ 6, 13. The Petition indicated an intention to file a temporary restraining order ("TRO"). ECF 1 ¶ 14.

In accordance with the Court's order requiring Petitioner to comply with Rule 65 and to serve the Petition on the government (ECF 3), Petitioner filed proof of service (ECF 6). The proof of service indicated that: (1) the Petition, the Judge's standing order, and a summons were sent via U.S. mail on October 22, 2026; and (2) a copy of the Petition was sent via email to Kenneth.Brakebill@usdoj.gov, with a copy to USACAN.ImmHabeas@usdoj.gov. ECF 6 at 2. In addition, the proof of service further stated that "[c]ounsel for Respondents have been informed that a motion for a temporary restraining order will follow in the week of October 26, 2026. Counsels

will meet and confer regarding a briefing schedule for the proposed TRO and will inform the Court accordingly of any stipulated briefing schedules." ECF 6 at 2. Accordingly, the Court issued a clerk's notice setting a briefing schedule for the forthcoming TRO and scheduled a hearing for November 2, 2026. ECF 7.

On October 23, 2026, Petitioner filed an application for a TRO. ECF 9. The Court granted the TRO application and ordered the government to immediately release Petitioner from custody. ECF 10 at 5. The Court also ordered the government: (1) not to re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker; and (2) to return Petitioner to this District and not to remove him therefrom during the pendency of these habeas proceedings. ECF 10 at 5. The TRO required the government to show cause why a preliminary injunction should not issue. ECF 10 at 5. The government timely filed its response on October 28, 2026 ("Responsive Brief"). ECF 14. Petitioner timely filed his reply on October 29, 2026. ECF 15. The TRO will expire on November 2, 2026, at 5:00 p.m. ECF 10 at 5.

Briefing is now complete and the matter is currently before the Court for decision. The Court held a preliminary injunction hearing on November 2, 2026. ECF 17. Having considered the parties' briefs, oral presentations, the relevant legal authority, and for the reasons below, the Court **GRANTS** preliminary injunctive relief.

## I. FACTUAL BACKGROUND

Petitioner is a 49-year-old citizen of Cameroon who entered the United States in 2014 on a tourist visa for a temporary period not to exceed May 27, 2015. ECF 9-1 ¶ 5; ECF 14-1 at 3. Petitioner has remained in the United States for the last 12 years and has a current work authorization card to work in the United States.[1] ECF 9-1 ¶¶ 5, 7. Petitioner has no criminal history. ECF 9-1 ¶ 7; ECF 14-1 at 3.

On April 29, 2015, Petitioner filed an asylum application (ECF 14-1 at 3), which was ultimately denied. (ECF 9-1 ¶ 6). On May 7, 2017, a notice to appear ("NTA") was served on Petitioner. ECF 14-1 at 3. Petitioner's matter was referred to immigration court, and his

[1] At oral argument, Petitioner's counsel confirmed that Petitioner is employed as a security guard in Humboldt County.

proceedings were terminated on April 28, 2022. ECF 9-1 ¶ 6; ECF 14-1 at 3.

On December 23, 2024, Petitioner married his current spouse, who is a U.S. citizen. ECF 14-1 at 3. He resides with his wife in Humboldt County, California and has a U.S. citizen child who lives in Texas.[2] ECF 9-1 ¶ 7. On August 10, 2026, a Petition for Alien Relative (I-130) and an Application to Register Permanent Residence or Adjust Status (I-485) were filed on Petitioner's behalf with U.S. Citizenship and Immigration Services ("USCIS"). ECF 14-1 at 3; ECF 15-1 at 2-3. In short, Plaintiff was applying for a green card (lawful permanent resident status) based on his marriage to his U.S. citizen wife. ECF 9 at 4; ECF 9-1 ¶ 6.

On October 21, 2026, Petitioner and his wife attended an interview at USCIS in San Francisco regarding his green card application. ECF 9 at 4; ECF 9-1 ¶¶ 4, 6; ECF 14-1 at 2. At the end of the interview, multiple ICE officers came into the room.[3] Petitioner was handcuffed and taken to a different floor. ECF 9-1 ¶ 6. He was informed that he would be sent to a detention facility in California City, California. ECF 9-1 ¶ 6. That same day, the government served Petitioner with an NTA. ECF 14-2. Based on the information before the Court, it appears that the instant Petition was likely filed before Petitioner was removed from this District. *See* ECF 1; ECF 9; ECF 9-1.

On October 22, 2026, USCIS issued a notice of decision denying Petitioner's Petition for Alien Relative (I-130) application. ECF 15 at 4; ECF 15-1. According to USCIS, Petitioner's submission of a decree nisi as evidence of a prior divorce was insufficient to show final dissolution of the previous marriage. ECF 15-1 at 3. The letter informed Petitioner that he had 30 days to appeal USCIS's denial to the Board of Immigration Appeals ("BIA"). ECF 15-1 at 3.

After being transported out of San Francisco, Petitioner remained in ICE custody at the California City detention facility until the Court ordered his immediate release on October 23, 2026.

---

[2] The exhibits attached to the government's Responsive Brief contain inconsistent information regarding whether Petitioner has a child. ECF 14-1 at 1 indicates that Petitioner does not have any children or dependents. ECF 14-1 at 3 indicates that Petitioner has one U.S. citizen child who lives with a biological mother from a previous marriage. Moreover, although Petitioner's TRO application indicates that he has two children (ECF 9-1 ¶ 7), Petitioner's counsel confirmed at oral argument that he has a U.S. citizen child who resides in Texas and that the Petitioner has worked in Humbolt County as a security guard.

[3] ICE was informed by USCIS that Petitioner's green card application was not approvable. ECF 14-1 at 2.

ECF 9 at 4; ECF 10 at 5; ECF 11. In a status report filed with the Court that same day, the government confirmed its compliance with the Court's TRO. ECF 11. The government indicated that Petitioner would be released from ICE custody and arrive back in San Francisco at approximately 3:00 or 4:00 a.m. the following morning. ECF 11.

## II. LEGAL STANDARDS

### A. Preliminary Injunction

The standard for issuing a preliminary injunction is virtually identical to the standard for issuing a TRO. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation and internal quotation marks omitted). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### B. Due Process Clause

The Due Process Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is settled law that the Due Process clause applies to noncitizens within the United States 'whether their presence here is lawful, unlawful, temporary, or permanent.'" *Salcedo Aceros v. Kaiser*, No. 25-cv-5624-EMC, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Id.* (citation and internal quotation marks omitted). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Id.* at 1051–52 (citation and internal quotation marks omitted).

## III. DISCUSSION

For the reasons explained below, the Court finds that Petitioner is entitled to preliminary injunctive relief. As "Petitioner's procedural due process claim affords him all the relief to which he is entitled—namely, release and a pre-deprivation hearing prior to re-detention—the Court need not and does not reach Petitioner's [substantive due process claim]." *Bhandohal v. Cruz*, No. 1:26-CV-04833 (EJD), 2026 WL 1954502, at *2 (E.D. Cal. July 6, 2026); *see also Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *5 (N.D. Cal. Aug. 21, 2025).

### A. Administrative Exhaustion is Not Required.

For habeas claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "Courts may nonetheless waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). To excuse exhaustion, Petitioner "must show that at least one of the *Laing* factors applies." *Id.*

Although the government contends that Petitioner should be required to exhaust his administrative remedies (ECF 14 at 3), Petitioner has met his burden of showing that at least one *Laing* factor applies. *See Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2722780, at *1, *3–7 (N.D. Cal. Sept. 15, 2026) (granting preliminary injunction and declining to require exhaustion of administrative remedies, where non-citizen who overstayed his tourist visa was

United States District Court
Northern District of California

detained by ICE agents without a pre-detention hearing in violation of his procedural due process rights); *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 2654723, at *1–3 (N.D. Cal. Sept. 8, 2026) (granting preliminary injunction to asylum seeker who was detained without a pre-deprivation hearing in violation of her due process rights and rejecting the government's argument that petitioner was required to exhaust her administrative remedies before bringing due process claims). Here, Petitioner alleges that the government violated his procedural due process rights when it detained him without notice or a pre-deprivation hearing. ECF 1 ¶ 13. As Petitioner points out, an immigration judge has no authority to decide Petitioner's procedural due process claim. *See Chaparro Ayala*, 2026 WL 2722780, at *7 n.5; *Norberto C.M. v. Warden, Cent. Valley Annex*, No. 1:26-CV-04674-MWJS, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026). Indeed, Petitioner's constitutional challenge is beyond the BIA's jurisdiction. *Chaparro Ayala*, 2026 WL 2722780, at *7 n.5 ("[W]here a petitioner's claims concern the constitutionality of an agency action prior to the bond hearing, they fall beyond the jurisdiction of the Board of Immigration Appeals and requiring administrative exhaustion would be futile.") (citation omitted). Accordingly, Petitioner has successfully shown that requiring administrative exhaustion would be futile. *See id.*

### B. All the *Winter* Factors are Satisfied.

#### i. Petitioner is Likely to Succeed on the Merits of His Procedural Due Process Claim.

Petitioner demonstrates that he "is likely to succeed in his Fifth Amendment procedural due process claim, or at minimum, that it presents a serious question going to the merits which, when combined with the other *Winter* factors, is sufficient for preliminary relief." *Id.* at *3 (footnote omitted). In evaluating a procedural due process challenge, the Court determines what process is required by weighing the three *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

United States District Court
Northern District of California

**a. Private Interest**

Petitioner argues that even though he overstayed his tourist visa, he has a significant liberty interest in his continued freedom. ECF 9 at 8; ECF 15 at 2, 4. The Court agrees.

Courts in this District have recognized that non-citizens who overstay their visas can still have a protected liberty interest in their continued freedom, even when they were not previously subject to detention. *Chaparro Ayala*, 2026 WL 2722780, at *3-4 (recognizing that petitioner who overstayed his tourist visa had a protected liberty interest in his continued freedom even though he "did not have a single incident of contact with any federal government agency prior to his detention"); *Murek v. Albarran*, No. 26-CV-10719-PCP, 2026 WL 3062130, at *3-4 (N.D. Cal. Oct. 13, 2026) (hold that petitioner who overstayed his tourist visa had a protected liberty interest after living in the United States for more than nine years). Petitioner has remained at liberty in the United States for 12 years without incident. *See Murek*, 2026 WL 3062130, at *3 ("Mr. Murek was given permission to enter the United States on a tourist visa 10 years ago. After his last entry into the country in February 2017, Mr. Murek built a life and a community here over the course of more than 9 years."). He has no criminal history and there is no evidence before this Court indicating that Petitioner is likely to be a flight risk or a danger to the community. *See id.* He has a U.S. citizen child who lives in the United States and has been married to his U.S. citizen wife for nearly two years. ECF 9-1 ¶¶ 6-7; ECF 14-1 at 3. Petitioner also has a current work authorization card to work in the United States and is employed as a security guard. ECF 9-1 ¶ 7. Thus, Petitioner has a constitutionally protected interest in his continued freedom, and the first *Mathews* factor weighs in his favor.

**b. Risk of Erroneous Deprivation and Value of Procedural Safeguards**

Petitioner next argues that his risk of erroneous deprivation is high, as he was detained by ICE without notice or any opportunity to contest his detention before a neutral arbiter. ECF 9 at 9-10. Under such circumstances, Petitioner argues that there is substantial value in providing additional procedural safeguards—*i.e.*, a pre-deprivation hearing. ECF 9 at 10. The government disagrees and contends that: (1) Petitioner "effectively seeks the facial invalidation of [8 U.S.C.] § 1226(a)" which only entitles Petitioner to a post-deprivation hearing; and (2) USCIS's denial of

Petitioner's application for adjustment of status constitutes a material change of circumstance that justifies his detention. ECF 14. The Court agrees with Petitioner.

As an initial matter, Petitioner is not asserting a facial challenge to Section 1226(a). *See generally* ECF 1; ECF 9. Instead, he is bringing an as-applied challenge based on the particular facts and circumstances of his case. *See* ECF 15 at 3. Even if Petitioner were asserting a facial challenge to Section 1226(a), the Court would decline to consider it, as the Ninth Circuit has held that Section 1226(a)'s procedures facially satisfy due process. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022).

Second, although the government suggests otherwise, the Ninth Circuit's decision in *Rodriguez Diaz* does not foreclose Petitioner's procedural due process claim. *Id.* ("[W]e do not foreclose all as-applied challenges to § 1226(a)'s procedures."). Moreover, as Petitioner points out, *Rodriguez Diaz* involved a very different situation than the one at issue here. ECF 15 at 3-4. In *Rodriguez Diaz*, the Ninth Circuit held that a non-citizen who has already been denied bond once does not have a constitutional right to a second bond hearing, when the only changed circumstance since his first bond hearing is the length of his detention. *Rodriguez Diaz v. Garland*, 53 F.4th at 1203-10; *Murek*, 2026 WL 3062130, at *4 (discussing *Rodriguez Diaz*). In addition, unlike the petitioner in *Rodriguez Diaz*, 53 F.4th at 1194, who had a "fairly lengthy criminal record," Petitioner has no criminal history (ECF 9-1 ¶ 7; ECF 14-1 at 3). Thus, *Rodriguez Diaz* is readily distinguishable and does not foreclose Petitioner's procedural due process claim.[4] *See Murek*, 2026 WL 3062130, at *4 (distinguishing *Rodriguez Diaz*); *Chaparro Ayala*, 2026 WL 2722780, at *5 (same).

Third, and more fundamentally, any post-deprivation hearing Petitioner would receive under Section 1226(a) "would only be provided after he had already been detained and thereby deprived

[4] The Court acknowledges that the government has cited several decisions from this District in which the Court held that the petitioner did not have a right to a pre-detention hearing in light of *Rodriguez Diaz*. *See* ECF 14 at 2 (citing cases). Nonetheless, other decisions from this District have distinguished *Rodriguez Diaz* and recognized that the Ninth Circuit "did not hold that all noncitizens facing removal under § 1226(a) have no due process right to a pre-detention hearing." *Murek*, 2026 WL 3062130, at *4; *Chaparro Ayala*, 2026 WL 2722780, at *5. The Court finds the latter decisions more persuasive under the particular facts and circumstances of this case.

of his liberty." *Murek*, 2026 WL 3062130, at *5; *Chaparro Ayala*, 2026 WL 2722780, at *5. As such, a post-deprivation hearing would do nothing to alleviate the substantial risk that Petitioner would be erroneously deprived of his liberty without a valid basis while awaiting his post-deprivation hearing. *Murek*, 2026 WL 3062130, at *5.

Fourth, although the government argues that the denial of Petitioner's application for adjustment of status justifies his re-detention (ECF 14 at 1), the government ignores the fact that civil immigration detention only has two legitimate bases: "to prevent flight or to protect against danger to the community." *Murek*, 2026 WL 3062130, at *5; *Holani v. Albarran*, No. 26-CV-08013-NW, 2026 WL 2654823, at *8 (N.D. Cal. Sept. 8, 2026). The government does not argue that Petitioner's re-detention would serve either of these purposes. ECF 14. Indeed, the record before the Court shows that Petitioner has no criminal history. ECF 9-1 ¶ 7; ECF 14-1 at 3. Petitioner lives with his wife of nearly two years and has remained in the United States for over a decade. ECF 9 at 4; ECF 9-1 ¶¶ 5-7; ECF 14-1 at 3. Under these circumstances, there is no evidence before the Court indicating that Petitioner is likely to be a flight risk or a danger to the community. *Murek*, 2026 WL 3062130, at *5; *Chaparro Ayala*, 2026 WL 2722780, at *5.

Fifth, and finally, Petitioner's proceedings remain ongoing. ECF 15.at 4. Although USCIS issued a notice of decision denying Petitioner's application for adjustment of status, Petitioner still has time to appeal the denial to the BIA. ECF 15-1.

In sum, because there is no evidence suggesting that Petitioner is a flight risk or a danger to the community, "there is a significant risk that the deprivation of his liberty in the time between his arrest and any post-arrest bond hearing under § 1226 would be entirely unjustified." *Murek*, 2026 WL 3062130, at *5. "Providing [Petitioner] with the procedural safeguard of a pre-detention hearing would have significant value in helping ensure that any future detention has a lawful basis." *Id.* Therefore, the second *Mathews* factor weighs in Petitioner's favor.

**c. Government Interest**

With respect to the third *Mathews* factor, Petitioner argues that the government's interest in re-detaining Petitioner without first providing notice and a hearing is minimal. ECF 9 at 10. Here, "there is no countervailing government interest . . . that supports conducting a bond hearing only

after [Petitioner] has been detained, rather than in advance thereof." *Chaparro Ayala*, 2026 WL 2722780, at *6 (citation and internal quotation marks omitted). As explained above, there is no evidence before this Court suggesting that Petitioner is likely to be a flight risk or a danger to the community. Accordingly, the government does not have any "strong interest in detaining [Petitioner] before evaluating whether there is any valid basis for his detention." *Murek*, 2026 WL 3062130, at *5. In addition, "the fiscal and administrative burdens of a pre-deprivation hearing are insignificant." *Chaparro Ayala*, 2026 WL 2722780, at *6. Indeed, if the government wishes to re-detain Petitioner, it need only provide him with notice and a pre-detention hearing before a neutral decisionmaker. *Id.* At any pre-detention hearing, the government shall have the burden of proving, by clear and convincing evidence, that Petitioner "is a danger to the community or a flight risk and that no conditions other than detention would be sufficient to prevent such harms." *Murek*, 2026 WL 3062130, at *6. Thus, the third *Mathews* factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors weigh in Petitioner's favor, and he has shown a likelihood of success on the merits.

**ii. The Other *Winter* Factors Support Preliminary Injunctive Relief.**

The government does not address the other *Winter* factors in its Responsive Brief. ECF 14. The Court, however, finds that Petitioner satisfies the first *Winter* factor. Therefore, it must examine the other factors.

With respect to the second *Winter* factor, Petitioner points out "that the deprivation of constitutional rights unquestionably constitutes irreparable injury." ECF 9 at 11 (quoting *Hernandez*, 872 F.3d at 994). In addition, "the Ninth Circuit has specifically recognized 'the irreparable harm imposed on anyone subject to immigration detention.'" *Chaparro Ayala*, 2026 WL 2722780, at *6 (quoting *Hernandez*, 872 F.3d at 995). Therefore, Petitioner satisfies the second *Winter* factor.

Regarding the third and fourth *Winter* factors, Petitioner emphasizes that "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." ECF 9 at 12 (quoting *Chaparro Ayala*, 2026 WL 2722780, at *6). Moreover, "it is always in the public

interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002(9th Cir. 2012) (citation and internal quotation marks omitted). Here, the balance of equities and the public interest tip sharply in Petitioner's favor. If the government can prove that Petitioner's detention is appropriate, it faces only a short delay in being able to re-detain him. *Chaparro Ayala,* 2026 WL 2722780, at *6. By contrast, Petitioner faces the potential loss of his freedom and the violation of his procedural due process rights. "Faced with a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Id.* at *7 (citation and internal quotation marks omitted). Thus, Petitioner satisfies the third and fourth *Winter* factors.

For the reasons explained above, Petitioner-Plaintiff satisfies all the *Winter* factors, and preliminary injunctive relief is therefore appropriate.

## IV. CONCLUSION

For the reasons explained above, Petitioner has shown that he has a liberty interest in his continued freedom, and that his procedural due process rights were likely violated when he was detained at the end of his USCIS interview on October 21, 2026, without notice or a pre-deprivation hearing. Petitioner would suffer further irreparable harm if he were detained again in violation of his constitutional rights, and the balance of hardships tips in his favor. Thus, he is entitled to preliminary injunctive relief. The Court enters judgment in favor of the Petitioner and against the Respondent.

Accordingly, the government is **ENJOINED** and **RESTRAINED** from arresting or detaining Petitioner during the pendency of these proceedings without prior notice and a pre-detention hearing before a neutral immigration judge. At such pre-detention hearing, the government shall bear the burden of proving, by clear and convincing evidence, that Petitioner-Plaintiff is a danger to the community or a flight risk and that no conditions other than detention would be sufficient to prevent such harm.

//

//

The government is further **ENJOINED** from removing Petitioner from this judicial district during the pendency of these habeas proceedings. This Order does not prevent the government from executing a final, executable order of removal if one is entered against Petitioner.

This order resolves ECF 9 and 10.

IT IS SO ORDERED.

Dated: November 2, 2026

TRINA L. THOMPSON
United States District Judge

ECF 9, 10

United States District Court
Northern District of California